Argued and submitted December 20, 1993, affirmed May 25, 1994

CALAPOOIA POLE STRUCTURES, INC.,
an Oregon corporation,
*Respondent,*

*v.*

Joseph P. MOULDER,
wtn is Joseph P. Mulder,
*Appellant,*

*and*

Barbara BOND,
Timothy R. Conley
and Sandra L. Conley,
*Defendants.*

Barbara BOND,
*Third-Party Plaintiff,*

*v.*

Joseph P. MULDER,
*Third-Party Defendant.*

(91CV-2686CC; CA A78098)

875 P2d 495

Thomas W. Crawford argued the cause and filed the briefs for appellant.

James C. Farrell argued the cause and filed the brief for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

Leeson, J., dissenting.

## De MUNIZ, J.

Defendant appeals from a judgment foreclosing a construction lien. We affirm.

Plaintiff is an Oregon corporation that constructs pole buildings. Defendant owns a 10-acre parcel of rural land. His residence is located on that parcel. In 1991, plaintiff agreed to construct a pole building on defendant's property. The building is located about 100-120 feet from defendant's residence.

Defendant refused to pay plaintiff for the construction. Plaintiff obtained a lien on defendant's property and then filed a complaint to foreclose the lien. At trial, defendant argued that plaintiff did not have a valid lien, because it did not provide him with an "Information Notice to Owner," pursuant to ORS 87.093. That statute requires that a contractor provide an owner with a notice of the owner's rights and responsibilities under the Construction Lien Law in order to claim a lien. The trial court accepted plaintiff's argument that ORS 87.093 applies only to residential construction and does not apply to the pole building, because that building is a commercial, not a residential, structure.

It is undisputed that the building is located on residential land, was to be used for, and is being used for the commercial purpose of repairing recreational vehicles. The question is whether plaintiff was required to comply with the notice requirements of ORS 87.093 in order to obtain a valid lien.

ORS 87.093 describes the contents of the Information Notice to Owner, specifies when and to whom the notice must be sent, and provides a penalty against contractors who fail to provide the notice. ORS 87.093(5) provides:

> "Notwithstanding ORS 87.010, if the original contractor does not provide an owner or agent with an 'Information Notice to Owner' as required under subsections (2) and (3) of this section, the original contractor may not claim any lien created under ORS 87.010 upon any improvement, lot or parcel of land of the owner for labor, services or materials *supplied under the residential construction or improvement contract* for which the 'Information Notice to Owner' was not provided." (Emphasis supplied.)

In addition, ORS 87.093(3) provides:

> *"This section applies only to a residential construction or improvement contract* for which the aggregate contract price exceeds $1,000[.]"* (Emphasis supplied.)

The statute defines a residential construction or improvement contract as "an agreement, oral or written, between an original contractor and an owner for the performance of a home improvement[.]" ORS 87.093(7)(b).[1]

Defendant argues that "[t]he protection of the notice provisions of the statutes must go to *any* structure which is constructed upon a person's residential property and/or upon land adjacent to an individual's residential dwelling." According to defendant, "[t]he intent of the legislature is not to define the type of structure being built, but to protect a lay property owner's residential property from foreclosure without first affording the lay property owner the statutory opportunity to receive minimum information pertaining to such a potential risk of loss."

■ Our task in interpreting a statute is "to discern the intent of the legislature." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To do so, we first examine the text and context of the statute. That includes consideration of the other provisions of the same statute and other related statutes. If the legislature's intent is clear from that inquiry, no further inquiry is necessary. 317 Or at 611.

■ The legislature could not have expressed its intent more clearly. The text of ORS 87.093(3) states that the requirement of providing an Information Notice to Owner applies to residential construction or improvement contracts, which are defined in ORS 87.093(7)(b) as agreements for the performance of a home improvement. Thus, only a contractor who performs home improvements pursuant to a residential

---

[1] ORS 87.093(7)(a) provides:

" 'Residential construction or improvement' means the original construction of residential property and constructing, repairing, remodeling or altering residential property and includes, but is not limited to, the construction, repair, replacement or improvement of driveways, swimming pools, terraces, patios, fences, porches, garages, basements and other structures or land adjacent to a residential dwelling."

construction or improvement contract is required to provide an Information Notice to Owner in order to perfect a lien.[2]

■ Contrary to defendant's assertion, the notice requirements of the statute do not apply to any structure constructed upon residential property. It is not the location of the structure, but the nature of the contract that determines whether the statutory notice is necessary.

■ Here, plaintiff's president, Wuthrich, testified that defendant told him that he wanted a building to work on his recreational vehicles, because he was tired of working in the rain. Wuthrich also testified that he was aware that defendant operated a recreational vehicle repair business and that defendant never indicated to him that there would be any type of residential use for the building. The pole building has no plumbing, kitchen, bath or separate rooms, and is not connected to or claimed to be connected to plaintiff's residence. The evidence shows that neither of the parties intended to enter into a contract for the construction of any type of home improvement and that the end product has few of the characteristics of a home, aside from a roof and four walls. On these facts, we hold that there was no contract for a home improvement. Accordingly, the trial court did not err when it ruled that plaintiff was not required to comply with ORS 87.093 to perfect its lien.

Defendant also assigns as error the award of attorney fees to plaintiff and the denial of his request for attorney fees. His arguments do not merit discussion.

Affirmed.

---

[2] A related statute, ORS 87.021(3)(b), provides:

"A person who performs labor upon a commercial improvement or provides labor and material for a commercial improvement or who rents equipment used in the construction of a commercial improvement need not give the notice required by subsection (1) of this section in order to perfect a lien created under ORS 87.010. As used in this paragraph:

"(A) 'Commercial improvement' means any structure or building not used or intended to be used as a residential building, or other improvements to a site on which such a structure or building is to be located.

"(B) 'Residential building' means a building or structure that is or will be occupied by the owner as a residence and that contains not more than four units capable of being used as residences or homes."

**LEESON, J.,** dissenting.

The majority artificially limits a residential property owner's right to notice, under ORS 87.093, to circumstances in which the improvement on the residential property will not be used for a commercial purpose. That limitation finds no support in the statute, and undermines the apparent purpose of protecting residential property owners from lien foreclosures on their homes, absent proper notice. Accordingly, I dissent.

A contractor may not claim a lien arising out of a "residential construction or improvement contract" unless the contractor gives a required "Information Notice to Owner." ORS 87.093(5). Plaintiff did not provide that notice in this case. Therefore, it may not claim a lien if the improvement was provided pursuant to a "residential construction or improvement contract."

A "residential construction or improvement" is

"the original construction of residential property and constructing, repairing, remodeling or altering residential property and includes, but is not limited to, the construction, repair, replacement or improvement of driveways, swimming pools, terraces, patios, fences, porches, *garages, basements and other structures or land adjacent to a residential dwelling*." ORS 87.093(7)(a). (Emphasis supplied.)

A "residential construction or improvement contract" is

"an agreement, oral or written, between an original contractor and an owner for the performance of a home improvement and includes all labor, services and materials furnished and performed thereunder." ORS 87.093(7)(b).

A "home improvement" is not defined in the statute. However, it appears, in context, to be synonymous with a "residential construction or improvement."

Defendant's pole barn, located approximately 100 feet from his house, is, under the plain terms of the statute, an "other structures or land adjacent to a residential dwelling." As such, it is a "residential construction or improvement" and a "home improvement." Nonetheless, the majority concludes that the notice requirement of ORS 87.093 does not apply "on these facts," because defendant never indicated that he wanted the pole barn for "any type of

residential use" and because it lacks most of "the characteristics of a home." 128 Or App at 194.

Nothing in ORS 87.093 suggests those requirements. The fallacy in the majority opinion is made plain if one considers a person who contracts to have a detached garage built adjacent to the person's home, to be used commercially. Under the plain meaning of the statute, residential construction or improvement includes construction of a garage on residential property. However, following the majority's reasoning in this case, notwithstanding the unambiguous terms of the statute, ORS 87.093 would not apply to that improvement, because the garage was built for a "commercial" rather than a "residential" use, and because it lacks the characteristics of a home.

I dissent.